IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| TERRY LEE AVERY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | 3: 13-CV-58 (CAR) |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on May 21, 2013, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh

the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed applications for disability insurance benefits and Supplemental Security Income benefits on September 21, 2009. (Tr. 23, 153-65). His claims were denied initially and upon reconsideration. (Tr. 103-106). A hearing was held before an Administrative Law Judge ("ALJ") in Athens, Georgia on June 14, 2011. (Tr. 43-102). Thereafter, in a hearing decision dated January 26, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 23-35). The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the

Commissioner.  (Tr. 1-7).

*Statement of Facts and Evidence*

Plaintiff was twenty-six (26) years of age at the time of the hearing before the ALJ, and alleged disability since September 1, 2008, due to intermittent explosive disorder, scoliosis, a bulged disc in his back, stomach ulcers, anxiety, high blood pressure, and depression. (Tr. 49, 179, 192).  Plaintiff attained a GED, and has past relevant work experience as a construction worker/pipe layer and heavy equipment operator. (Tr. 33).

As determined by the ALJ, Plaintiff suffers from the following severe impairments: major depressive disorder, obesity, degenerative disc disease, and anxiety.  (Tr. 25).  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, and he remained capable of performing light work, except

> the claimant should: only engage in simple routine repetitive task involving no more than simple, short instructions and simple work-related decisions with few work places changes; only engage in simple routine task; only be expected to follow short, simple instructions; only be expected to make simple, work-related decisions with few work place changes; have no work at fixed production rate pace; only occasionally have interaction with general public, co-workers and supervisors. (sic)

(Tr. 27, 28).  Although Plaintiff could not return to his past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy, and thus, was not disabled. (Tr. 33-34).

## DISCUSSION

Plaintiff alleges that the ALJ improperly rejected the opinion of Plaintiff's treating physician, and failed to properly consider Plaintiff's credibility.  (Docs. 10, 12).

3

*Treating Physician*

Plaintiff alleges that the ALJ failed to give proper weight to Dr. Jose Cangiano, Plaintiff's treating psychiatrist, when determining Plaintiff's residual functional capacity.  (Doc. 10).   The determination of the residual functional capacity is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   The regulations state that the final responsibility for assessing a claimant's residual functional capacity rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c).   Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments.   20 C.F.R. § 404.1527(d)(2).   "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.   "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records.   *Id.*

The ALJ appears to give no weight to Dr. Cangiano's opinion evidence because his opinion was not consistent with his own findings and was not supported by the record. (Tr. 32). Dr. Cangiano submitted a questionnaire entitled "Medical Opinion Re: Ability to do Work-Related Activities (Mental)", wherein he opined that Plaintiff's mental limitations mostly left Plaintiff either "seriously limited, but not precluded" or "unable to meet competitive standards", as to abilities and aptitudes needed to do unskilled, semiskilled, and skilled work. (Tr. 562-64). Dr. Cangiano explained that Plaintiff was severely impaired in his functioning due to his emotional disorder. (Tr. 563-64). In his mental abilities and aptitudes needed to do particular types of jobs, Dr. Cangiano opined that Plaintiff was "limited but satisfactory" in two areas, "unable to meet competitive standards" in two areas, and had "no useful ability to function" in one area. (Tr. 565). Dr. Cangiano did not provide any explanation for these limitations. He also opined that Plaintiff would be absent from work more than four days per month. (Tr. 566). In Dr. Cangiano's opinion, Plaintiff would be able to manage benefits in his own best interest. (Tr. 566).

In January 2010, Plaintiff was admitted to SummitRidge for four days for increased depression, helplessness, hopelessness, and active suicidal ideation. (Tr. 640). During an evaluation completed by Dr. Cangiano on the date Plaintiff entered SummitRidge, Plaintiff was alert and oriented X3, had no psychomotor agitation or retardation, his speech was clear, his mood and affect were calm, he had no psychosis, he had no homicidal ideations, and he had fair insight and judgment. (Tr. 649). Plaintiff presented as depressed and hopeless, and had suicidal ideations. (Tr. 649). Plaintiff was diagnosed with major depression, recurrent. (Tr. 649). At the time of his discharge, Plaintiff's "[m]ood and affect were back to baseline functioning and [Plaintiff had] significantly decreased symptoms of major depressive disorder." (Tr. 640). He had no suicidal ideations. (Tr. 640).

5

In October of 2010, Dr. Cangiano appears to note that Plaintiff reported severe anxiety/worry, significant impairment depression, and sadness, hopelessness, and helplessness. (Tr. 567). On December 10, 2011, Plaintiff reported an increase in mood swings, anger, impulsivity, depression, and anxiety, and Plaintiff reported poor functioning in most aspects of his life. (Tr. 568). According to Dr. Cangiano's March 2011 notes, Plaintiff was still severely impaired by anxiety, poor impulse control, and overwhelming depression, and Dr. Cangiano stated Plaintiff was "quite disabled." (Tr. 569).

While Dr. Cangiano's treatment notes indicate that Plaintiff suffered from depression and anxiety, his notes do not support his opinion that Plaintiff is extremely limited in his ability to perform any type of work. Dr. Cangiano appears to have treated Plaintiff during one stay at SummitRidge and on three office visits. The treatment notes contain minimal objective findings, no diagnostic testing, and do not include any restrictions or functional limitations. Dr. Cangiano's treatment notes contain only conclusory diagnoses with no supporting evidence, as to Plaintiff's limitations. Accordingly, the treatment notes and SummitRidge records are inconsistent with Dr. Cangiano's opinion of Plaintiff's limitations. *See Dycus v. Astrue*, 2009 WL 3415372, *10 (S.D. Ala., Oct. 19, 2009) (finding the ALJ properly discredited a physician's findings when there was an inconsistency between the doctor's opinion and his treatment notes, which failed to show objective findings to support the extreme limitations opined).

The evidence contained elsewhere in the record also fails to support Dr. Cangiano's opinion of Plaintiff's limitations. In January of 2010, Plaintiff presented to Athens Regional Medical Center for a mental health evaluation. (Tr. 655). He was alert and oriented, his affect and mood appeared normal, and he had no signs of hallucination or other psychotic thoughts. (Tr. 655). Plaintiff's speech was fluent and not pressured, his speech and gestures were appropriate, and his judgment and insight into his

6

condition was normal. (Tr. 655). Plaintiff was admitted to Athens Regional Medical Center for a suicide attempt in September of 2011. (Tr. 593). Two days after being admitted, Plaintiff's sensory and mental statuses were within normal limits. (Tr. 595). Plaintiff reported to a hospital psychiatrist that "his recent suicide attempt was 'stupid.'" (Tr. 602). Plaintiff stated that he had no intention to further harm himself, and was going to resume his outpatient treatment upon release. (Tr. 602). The psychiatrist found that Plaintiff's suicide attempt was impulsive, with a low risk and high rescue potential, and he concluded that Plaintiff did not present an imminent danger to himself. (Tr. 602). Plaintiff again presented to the Athens Regional Medical Center two days after he was released due to suicidal thoughts that started following a change in medication. (Tr. 571).

Additionally, while treating at SummitRidge in 2010, Plaintiff's capacity for activities of daily living was good; his memory and speech were within normal limits, and he was oriented to time, place, person, date, and situation. (Tr. 660). At the hearing before the ALJ, Plaintiff testified that his depression had improved since he began seeing Dr. Cangiano. (Tr. 53-54). The record shows that Plaintiff's mental limitations were not as severe as those opined by Dr. Cangiano, and therefore the record does not support Dr. Cangiano's opinion.

The ALJ determined that Dr. Cangiano's opinion was inconsistent with his own medical records and was not supported by the objective medical evidence. The ALJ clearly articulated his reasoning for not relying on Dr. Cangiano's opinion, and his decision was supported by substantial evidence. Thus, the ALJ did not commit reversible error when he gave no apparent weight to Dr. Cangiano's opinion as to Plaintiff's limitations.

*Plaintiff's Credibility*

Plaintiff alleges that the ALJ erred when he discredited Plaintiff's complaints of pain. (Doc. 10).

If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then she must consider the claimant's subjective testimony of the symptoms. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence. 20 C.F.R. § 404.1529(c). The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information. SSR 96-7p.

After discussing in detail the Plaintiff's testimony and subjective complaints, the ALJ determined that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> . . .
>
> In reviewing the entire record, I find that the claimant's allegations are not generally credible.

(Tr. 30, 32).

Plaintiff appears to maintain that the ALJ erred by discrediting Plaintiff's allegations regarding his mental impairment limitations solely because the impairments were not alleged in the first function

8

report.  (Docs. 10, 12).  The ALJ, however, found that Plaintiff lacked credibility in regard to his mental impairments because Plaintiff did not provide any mental disorders or mood impairments in his first function report, the record contained discrepancies between Plaintiff's first function report and his second function report, and also because the evidence of record did not support the severity of mental impairments that Plaintiff alleged. (Tr. 31-33).

The ALJ specifically noted that Plaintiff stated he suffered severe anxiety and panic attacks when he was around others, but Plaintiff was able to go to doctors' appointments, communicate effectively, and interact with others.  (Tr. 31).  Further, the ALJ noted that Plaintiff alleged he was disabled due to physical and mental impairments since September of 2008, but had not sought treatment for depression and anxiety in 2008.  (Tr. 32).  The record shows that Plaintiff was treated at Advantage Behavioral Health Systems for substance abuse problems in 2008.  (Tr. 252).  While Plaintiff referenced anxiety and trouble sleeping a few times, and one treatment entry states that Plaintiff has intermittent explosive disorder, the emphasis of the medical records reflect substance abuse treatment.  (Tr. 252-266).  It was noted that Plaintiff stated he had no psychiatric history.  (Tr. 260).  As the record as a whole provides substantial evidence to support the ALJ's credibility determination, the ALJ did not err when he discredited Plaintiff, in part, because Plaintiff did not include his mental impairments in his first function report.

Plaintiff also contends that the ALJ erred when he discredited Plaintiff's complaints of back pain because the ALJ ignored Plaintiff's monthly back treatment with Dr. Holladay, which took place from July 2011 – January 2012.  (Docs. 10, 12).  Plaintiff asserts that the ALJ also failed to consider the objective findings by other providers.

Review of the record shows that the treatment records from the Athens Pain Management

9

Clinic, where Dr. Holladay appears to have treated Plaintiff from July 2011 until January 2012, were submitted to the Appeals Council, and made part of the record, after the ALJ rendered his opinion. (*See* Tr. 6).  Accordingly, the ALJ did not commit reversible error when he did not consider Plaintiff's treatment with Dr. Holladay, as the evidence was not in the record at the time of the ALJ's decision.

The ALJ determined that the objective medical evidence did not substantiate the level of pain Plaintiff alleged.  (Tr. 30).  Plaintiff presented to Athens Regional Medical Center repeatedly for different ailments, including back and neck pain.  (Tr. 30, 279-368, 434-528).  Plaintiff was given conservative treatment, and stated that medication was keeping his pain under control.  (*See* Tr. 30, 406).  Further, there is a lack of evidence that Plaintiff followed up with his primary care physician regarding his back pain.  The ALJ's determination that Plaintiff lacked credibility with regard to his physical complaints of pain is clearly stated in the ALJ's decision and is supported by substantial evidence.

The ALJ properly discredited Plaintiff's complaints of mental and physical pain and limitations, and substantial evidence supports the ALJ's decision that Plaintiff lacked credibility.  Accordingly, the ALJ did not commit reversible error in his determination of Plaintiff's credibility.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable C. Ashley Royal, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 11th day of April, 2014.

                                                s/ ***THOMAS Q. LANGSTAFF***
                                                **UNITED STATES MAGISTRATE JUDGE**

llf